UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| GARY SCOTT HAUFF, | ) | No. EDCV 13-497 FFM |
| Plaintiff, | ) ) | MEMORANDUM DECISION AND ORDER |
| v. | ) ) | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) ) ) | |
| Defendant. | ) ) | |

Plaintiff brings this action seeking to overturn the decision of the Commissioner of the Social Security Administration denying his application for a period of disability, disability insurance benefits, and supplemental security income benefits. The parties consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States Magistrate Judge. Pursuant to the March 26, 2013 Case Management Order, on February 7, 2104, the parties filed a Joint Stipulation ("JS") detailing each party's arguments and authorities. The Court has reviewed the JS and the administrative record ("AR"), filed by defendant on October 3, 2013. For the reasons stated below, the decision of the Commissioner is affirmed.

///

///

///

///

## PROCEDURAL HISTORY

On or about March 18, 2009, plaintiff applied for a period of disability, disability insurance benefits, and supplemental security income benefits. (AR 191-204.) Plaintiff alleged disability beginning January 2, 1996. The applications were denied initially and upon reconsideration. (AR 65-69, 72-77.) Plaintiff requested a hearing before an administrative law judge ("ALJ"). (AR 78.) ALJ Joseph D. Schloss held hearings on March 29, 2011 and October 31, 2011. (AR 36-59.) Plaintiff appeared with counsel and testified at the hearings. (*Id.*) On December 29, 2011, the ALJ issued a decision finding plaintiff disabled from March 6, 1996 through January 2, 2001, but not disabled because of medical improvement as of January 3, 2001. (AR 15-35.) Plaintiff sought review of the decision before the Social Security Administration Appeals Council. (AR 14.) The Council denied the request for review on January 19, 2013. (AR 1-5.)

Plaintiff filed the complaint herein on March 22, 2013.

## ISSUE

Plaintiff raises three issues:

1. Whether the ALJ's finding of medical improvement rests on substantial evidence;
2. Whether the ALJ provided clear and convincing reasons for rejecting plaintiff's testimony; and
3. Whether the ALJ provided a complete hypothetical to the vocational expert.

(JS 5.)

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420,

28 L. Ed. 2d 842 (1971); *Desrosiers v. Secretary of Health & Human Servs.*, 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. This Court must review the record as a whole and consider adverse as well as supporting evidence. *Green v. Heckler*, 803 F.2d 528, 929-30 (9th Cir. 1986). Where evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld. *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984).

## DISCUSSION

1. <u>Medical improvement</u>.

    A. <u>The medical record</u>.

    Plaintiff claimed disability based on back pain resulting from a 1996 workplace incident; anxiety; and irritable bowel syndrome ("IBS"), which required frequent bathroom trips.[1] (AR 51, 256.) As to his back pain, an April 1996 MRI revealed L5-S1 disc herniation, which caused nerve root impingement. Plaintiff underwent an L5-S1 diskectomy in September 1996. In August 1997, he had a right-sided L5-S1 laminectomy with a diskectomy and foraminotomy. In November 1997, plaintiff claimed that his back pain had not improved. Subsequent imagining tests revealed recurrent L5-S1 herniation, nerve root impingement, and epidural fibrosis at the L4-L5

---

[1] Plaintiff's anxiety and IBS symptoms are not at issue. (*See* JS 5-11, 15-16.)

and L5-S1 levels. In September 2000, plaintiff underwent anterior and posterior spinal fusion procedures at the L4-L5 and L5-S1 levels.[2] (*See* AR 25, 1071-72.)

The record reflects that plaintiff's treatment in the following years was sporadic. (*See* AR 663-718.) Plaintiff did not report significant problems with his lower back until February 2009. In a February 2, 2009 examination, plaintiff had a diminished range of motion in his lumbar spine, some sensory loss, and a positive straight-leg raising ("SLR") test without nerve irritability in the seated and supine positions on the right side. (AR 846-47.)

In October 2009, a lumbar spine MRI revealed degenerative retrolisthesis and a 2mm disc bulge at L2-L3. There was a 6mm disc bulge in the coronal plane at L3-L4 and there were post-operative changes at L4-L5 and S4-S1. (*See* AR 1014.) Plaintiff had an antalgic gait, pain with lumbar motion, and a positive right-side SLR test at 60º supine and 90º sitting. (AR 1013.) His treating physician, Arthur Harris, M.D., discussed lumbar epidural injections and spinal surgery. (*Id.*)

In February 2010, plaintiff had increased pain with lumbar motion and a positive right-side SLR test at 45º supine and 90º sitting. (AR 1010.) However, he reported that he improved since he was last seen. (AR 1009.) In April 2010, plaintiff had lumbar pain with motion and a positive right-side SLR test at 60º supine and 90º sitting. (AR 1006.) However, he reported that he was doing well, without any flare-ups of his back pain. (AR 1005.) Dr. Harris prescribed medication and advised plaintiff to return for evaluation on an as-needed basis. (AR 1006.) In July 2010, plaintiff reported that he had been doing well, but had suffered some flare-ups of his back pain with increased activity. (AR 1001.) Plaintiff had pain with lumbar motion, decreased sensation, and a positive right-side SLR test at 45º supine and 90º sitting.

---

[2] Plaintiff's medical history and treatment prior to January 3, 2001 appear not to be disputed.

4

However, plaintiff walked with a non-antalgic gait and could heel-and-toe walk without difficulty. (AR 1002.)

In October 2010, plaintiff reported worsening pain with the cold weather, but continued with self-treatment including medication and bracing. Dr. Harris's physical findings were identical to his findings in July 2010. (AR 999.) Dr. Harris instructed plaintiff on soft-tissue modalities, exercise, participation in activities as tolerated, and medication as needed. (AR 1000.) In addition, he discussed other treatment options for plaintiff's condition, including trigger point injections, epidurals, facet blocks, and surgery. (AR 1000.) Dr. Harris's physical findings on examination and recommendations were the same in December 2010 and March 2011. (AR 997, 1087.)

In May 2011, Gary Baker M.D. examined plaintiff. Dr. Baker reported that plaintiff's motor testing was normal, but sensation to pinprick and light touch was decreased with areas of localized parenthesis over the L4, L5, and S1 distributions. (AR 1096.) Plaintiff had a positive right-side SLR test at 70º sitting. (*Id.*) Dr. Baker diagnosed plaintiff with lumbar radiculopathy and post laminectomy syndrome and recommended a trial of lumbar spinal cord stimulator. (*Id.*)

B. The physicians' opinions.

In March 2011, the ALJ propounded medical interrogatories to Arthur Lorber, M.D. (as to plaintiff's "[o]rtho [f]unctionality" only) and Samuel Landau, M.D. (as to plaintiff's IBS only). (AR 1036, 1048.) On April 12, 2011, Dr. Landau opined (in pertinent part) that plaintiff had the residual functional capacity ("RFC") to lift and carry up to 10 pounds frequently and 11 to 20 pounds occasionally. (AR 1060.) Dr. Landau further opined that plaintiff could sit for two hours at a time and up to six hours in an eight-hour workday. (AR 1061.) Plaintiff could stand or walk for 15 to 30 minutes at a time and up to one hour each in an eight-hour workday. (*Id.*)

On June 12, 2011, Dr. Lorber opined (in pertinent part) that plaintiff had chronic low back pain, status postoperative diskectomy L5-S1 in 1996 and 1997, with anterior and posterior fusion at L4-L5 and L5-S1 in 2000. (AR 1074.) Dr. Lorber further

opined that there was evidence, in the form of radiologic studies, of adjacent level degenerative disc disease at L2-L3 and L3-L4. (*Id.*) However, there was "no convincing clinical evidence of ongoing lumbar radiculopathy." (*Id.*)

Dr. Lorber opined that plaintiff had the RFC to lift and carry up to 10 pounds occasionally, sit for 30 minutes at a time and up to six hours total per eight-hour workday, and stand or walk for 30 minutes at a time and up to two hours per eight-hour workday. (AR 1076-77.)

Similarly, in June 2009, a state agency physician opined that plaintiff could occasionally and frequently lift and carry 10 pounds; sit about six hours per eight-hour workday; and stand and/or walk at least two hours in an eight-hour workday. (AR 936.) The state agency physician further opined that plaintiff would need the option to alternate sitting and standing for 10 minutes each hour as needed. (*Id.*)

In November 2009, a second state agency physician opined that plaintiff could occasionally lift and/or carry 10 pounds and frequently lift and/or carry up to 10 pounds per eight-hour workday. (AR 954.) Plaintiff could sit six hours and stand and/or walk two hours per eight-hour workday, with the option to alternate sitting and standing for 10 minutes each hour as needed. (*Id.*)

C. The ALJ's decision.

In his decision, the ALJ found that plaintiff was disabled through January 2, 2001 (*i.e.*, six months after his lumbar fusion surgery). (AR 25-26.) The ALJ found that medical improvement occurred as of January 3, 2001. (AR 26.) In finding that plaintiff was capable of working as of that date, the ALJ gave the "greatest weight" to Dr. Landau's and Dr. Lorber's opinions. The ALJ also discussed the medical evidence and the factors bearing on plaintiff's credibility, ultimately finding that plaintiff was less than credible as to his subjective symptoms. (AR 26-32.)

Plaintiff contends that the ALJ's finding of medical improvement is not supported by substantial evidence. (JS 5-11, 15-16.) The Court finds that remand on this issue is not warranted.

      D.    <u>Analysis</u>.

Medical improvement refers to any decrease in the medical severity of the claimant's impairment or impairments present when the claimant was last determined to be disabled. 20 C.F.R. §§ 404.1594(b)(1), 416.994(b)(1). A determination that medical improvement has occurred "must be based on changes (improvement) in the symptoms, signs, and/or laboratory findings associated with [the claimant's] impairment(s)." *Id.* Unless an exception applies, only medical improvement related to the ability to do work may lead to the termination of disability of benefits. 20 C.F.R. §§ 404.1594(a), 416.994(a). Medical improvement is related to the ability to work if there is a decrease in severity and an increase in the claimant's functional capacity to do basic work activities. 20 C.F.R. §§ 404.1594(b)(3), 416.994(b)(3).

With respect to the medical evidence, the ALJ asserted that there were "no signs of consistent spinal nerve root irritation" and "no abnormalities of x-ray and/or imaging tests." (AR 30.) This interpretation of the evidence is reasonable. As set forth above, prior to plaintiff's June 2000 fusion surgery, an MRI revealed a recurrent disc herniation impinging the S1 nerve root. Although imaging tests after his fusion surgery revealed disc space narrowing, disc bulging, and disc dessication, there is no post-fusion imagining evidence of disc herniation or nerve root impingement. Furthermore, although plaintiff had several positive SLR tests, beginning in July 2010, plaintiff's other findings on physical examination, such as his antalgic-gait indicated normal or near-normal function. Moreover, as discussed further below, Dr. Lorber indicated that the SLR tests were not firm positives.

The ALJ also noted that there was a "lack of longitudinal evidence" substantiating plaintiff's complaints. (AR 30.) This interpretation of the record is also reasonable. The record reflects that between 2001 and through early 2009, plaintiff did not consistently seek treatment for his back or allege that it was causing him continuing pain. In 2009, treatment for his back was limited to two appointments and an MRI test. He saw his treating source more regularly in 2010 and 2011, but only once every two to

three months. And as discussed above, the objective clinical evidence of nerve root irritation (such as the positive SLR tests) did not include imaging evidence.

The ALJ further noted that Dr. Lorber opined that plaintiff's disability resulting from his back impairment lasted only through January 2, 2001. (AR 32.) The ALJ gave weight to Dr. Lorber's opinion, reasoning that it was consistent with the objective medical evidence. (*Id.*) Plaintiff counters that Dr. Lorber's opinion does not constitute substantial evidence, because he did not review the entire record. Specifically, plaintiff asserts that Dr. Lorber reviewed only Exhibits 1F through 16F, whereas the record comprises Exhibits 1F through 27F. (JS 7 (citing AR 1070).) In fact, Dr. Lorber's discussion of plaintiff's records makes clear that in addition to Exhibits 1F-16F, Dr. Lorber reviewed Exhibits 18F, 20F, and 21F. (AR 1073-74.) Of the remaining exhibits, only 25F and 26F bear on plaintiff's spinal impairments,[3] and they comprise records of plaintiff's March 15, 2011 and May 25, 2011 visits to Dr. Harris and Dr. Baker, respectively. (AR 1085-99.) Those records do not include imaging tests of plaintiff's spine; furthermore, Dr. Harris's findings were essentially the same as those in previous examinations. (*See id.*) The ALJ reasonably found that nothing in the medical records submitted after Dr. Lorber's opinion contradicted his opinion. (AR 32.)

Plaintiff further argues that Dr. Lorber incorrectly stated that there was no evidence of radiculopathy. In fact, Dr. Lorber stated that there was no "*convincing clinical evidence*" of "*continuing*" radiculopathy. (AR 1074 (emphasis added).) Dr. Harris's diagnosis of radiculopathy, which plaintiff emphasizes, is not "clinical evidence" *per se*. *See* 20 C.F.R. §§ 404.1528, 416.928 (defining, *inter alia*, "signs" and "laboratory findings"). In addition, Dr. Lorber opined that the February 2009 SLR test was negative rather than positive, as it was without nerve irritability. (AR 1074.) Further, he noted that plaintiff's other SLR tests were positive "only" at 90º in the

---

[3] Exhibits 17F and 22-25F are administrative documents, not medical records. (*See* AR 947-952, 1036-1084.) Exhibit 19F bears on plaintiff's psychiatric impairment and largely duplicates other exhibits. (*See* AR 958-993.)

seated position, suggesting that those results did not conclusively demonstrate nerve root involvement. (AR 1073, 1074.) And as discussed above, and as Dr. Lorber's review of the record shows (*see* AR 1072-74), any positive physical findings were accompanied by negative findings, and there were no post-fusion imaging tests showing herniation or impingement. Thus, the ALJ reasonably concluded that Dr. Lorber's opinion was consistent with the objective evidence.

Furthermore, the ALJ provided sufficient reasons for giving weight to Dr. Lorber's opinions over the opinions of plaintiff's treating sources. An ALJ may give weight to the opinion of a nonexamining physician over a treating physician's opinion if he provides specific, legitimate reasons, supported by substantial evidence, for his decision. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995), *limited on other grounds*, *Saelee v. Chater*, 94 F.3d 520, 523 (9th Cir. 1996). Greater consistency with the record as a whole is a specific, legitimate reason for giving controlling weight to a nontreating physician's opinion over that of a treating physician. *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4). And as discussed below, the ALJ properly found plaintiff less than credible. As plaintiff's treating sources' reports and diagnoses were based largely on his subjective complaints, plaintiff's lack of credibility provided a further valid ground for giving weight to Dr. Lorber's opinion. *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989).

Even though an impairment is subject to "temporary remission and exacerbations," a factfinder may determine that improvement has been sustained long enough to permit a finding of medical improvement. *See* 20 C.F.R. §§ 404.1594(b), 416.924(b). Here, in light of the overall record, the ALJ reasonably determined that plaintiff experienced sustained improvement sufficient to demonstrate medical improvement. Plaintiff urges a different interpretation of the evidence; but as the ALJ's determination is reasonable, the Court must defer to it. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).

Finally, plaintiff notes that Dr. Landau opined that plaintiff had the ability to stand/walk for one hour each day. Plaintiff asserts that although the ALJ gave "great weight" to Dr. Landau's opinion, the ALJ rejected the one hour stand/walk limitation without explanation. (JS 11; *see* AR 26, 32.) Plaintiff misreads the ALJ's decision. The ALJ explicitly noted that as between Dr. Landau's and Dr. Lorber's opinions, he gave greater weight to Dr. Lorber's opinion, because (1) it was more recent; and (2) it was more consistent with plaintiff's testimony. (AR 32.) It was the ALJ's prerogative to decide among opinions of equal weight.

For the foregoing reasons, remand on this issue is not warranted.

2.     Plaintiff's credibility.

Plaintiff testified that because of stomach problems, he spent a lot of the time in the restroom each day, and sometimes visited the restroom 20 to 30 times a day. (AR 54; *see also* AR 42.) With respect to his stomach, he had more bad days than good days. (*Id.*) He testified that he had to lie down, elevate his legs, and use heating pads to relieve pain in his legs. (*Id.*) He could only sit or stand for 15 to 20 minutes at a time. (AR 55.) He used a back brace, but not a walker. (AR 56.) On average, he took four 500mg tablets of hydrocodone every day. (AR 43-44.) The medication made him "zone out," and he could not drive or concentrate much after taking it. (AR 44-45.)

Plaintiff testified that he could prepare meals for himself and do light cleaning. (AR 55.) However, his children did most of the vacuuming and cooking when they stayed with him. (*Id.*) He drove his son to and from school. (AR 51-52, 52-53.) He went outside every day to pick up his mail, about two buildings over. (AR 56.) Plaintiff testified that no doctor had threatened to report him, or actually reported him, to the Department of Motor Vehicles to have his license suspended because of his physical ailments or medication regimen. (AR 45.) Plaintiff made similar statements about his activity level in a disability report. (AR 264-69.) He additionally stated that he shops in stores one or two times a month. (AR 267.)

///

The ALJ found that plaintiff was less than credible in his descriptions of his subjective symptoms. (AR 28.) The ALJ based his conclusion on the medical evidence, plaintiff's activities of daily living ("ADL"), and inconsistencies within plaintiff's testimony. (AR 28-31.) Plaintiff contends that the ALJ failed to provide legally-sufficient reasons for finding plaintiff incredible. (JS 16-19, 22-24.) The Court finds that remand is not warranted on this issue.

B.  Analysis.

Once a claimant produces medical evidence of an underlying impairment that is reasonably likely to cause the alleged symptoms, medical findings are not required to support their alleged severity. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991). However, an ALJ may reject a claimant's allegations upon: (1) finding evidence of malingering; or (2) providing clear and convincing reasons for so doing. *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003).

In the absence of evidence of malingering, an ALJ may consider, *inter alia*, the following factors in weighing the claimant's credibility: (1) inconsistencies in either the claimant's testimony or between the claimant's testimony and his conduct; (2) his work record; and (3) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002); *see also* 20 C.F.R. §§ 404.1529(c), 416.929(c); SSR 96-7p, 1996 WL 374186. The ALJ may also use "ordinary techniques of credibility evaluation." *Thomas*, 278 F.3d at 960. The ALJ's credibility determination is entitled to deference if his reasoning is supported by substantial evidence in the record and is "sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony . . . ." *Bunnell*, 947 F.2d at 345 (internal quotation marks omitted).

/ / /

/ / /

1　　　　As discussed above, the ALJ asserted that there was a lack of "longitudinal
2  evidence" supporting plaintiff's claims. (AR 30.) This assertion is true both for
3  plaintiff's back impairment (*see* discussion, *supra*) and his IBS. Plaintiff's treatment
4  for his IBS was intermittent at best. At best, he saw his internist only every four to five
5  months for the disorder, and at times went a year or more without seeing him. (*See*,
6  *e.g.*, AR 871 (noting that plaintiff had been seen in March 2000 and next in July 2004),
7  878 (noting in September 2005 that plaintiff had not been seen since August 2004); *see*
8  *generally* 851-913, 1017-23.) An ALJ may properly discount a plaintiff's subjective
9  symptoms based on an unexplained failure to seek treatment. *Fair v. Bowen*, 885 F.2d
10 597, 603 (9th Cir. 1989); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).
11 Here, the lengthy gaps between plaintiff's IBS doctor visits suggests that the
12 impairment was not as severe as he claimed. Similarly, the lengthy delay between
13 plaintiff's fusion surgery and his follow-up visits for alleged back pain indicates that the
14 surgery in fact ameliorated plaintiff's symptoms.

15　　　　Moreover, as discussed above, the objective evidence did not support plaintiff's
16 claims of disabling back pain. Similarly, there was little objective evidence to support
17 plaintiff's claims of disabling IBS. In April 2008, for example, Dr. Lonkey noted that
18 plaintiff's recent chemistry panel showed normal liver function and normal renal
19 function. There was no evidence of malabsorption or organ dysfunction. (AR 858.) In
20 January 2007, April 2007, and March 2011, Dr. Lonkey noted that there were no focal
21 neurological findings. (AR 1023.) Plaintiff points to no evidence of more serious
22 physical findings or test results, and the Court did not find any. Although an ALJ may
23 not premise the rejection of the claimant's testimony regarding subjective symptoms
24 *solely* on the lack of medical support (*Lester*, 81 F.3d at 834), weak objective support
25 does undermine subjective complaints of disabling symptoms. *See Tidwell v. Apfel*, 161
26 F.3d 599, 601-02 (9th Cir. 1998); *Regennitter v. Commissioner of Soc. Sec. Admin.*, 166
27 F.3d 1294, 1297 (9th Cir. 1999).
28 / / /

1       The ALJ also asserted that plaintiff received only routine, conservative, and non-
2 emergency treatment. (AR 30.) This characterization of the record was reasonable. As
3 discussed above, after his fusion surgery, plaintiff was treated only with medication for
4 his back impairment. And as the ALJ noted (AR 30), although plaintiff used a back
5 brace, he did not use an assistive device as a cane or walker. In addition, plaintiff was
6 treated only with medication for his IBS. (*See*, *e.g.*, AR 1018, 866.) Evidence of
7 conservative treatment is sufficient to discount a claimant's testimony regarding the
8 severity of an impairment. *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007).

9       The ALJ also reasonably determined that plaintiff's ADL undermined his claims
10 of disabling symptoms. Where a claimant is able to spend a substantial part of his day
11 in activities that would translate to a workplace setting, the ALJ is entitled to give less
12 weight to his allegations of disabling pain. *Burch v. Barnhart*, 400 F.3d 676, 680-81
13 (9th Cir. 2005); *see also Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001)
14 (fibromyalgia patient's claims of disabling pain undermined by daily activities such as
15 being sole caregiver of two young children; doing housework; and leaving house daily
16 to go to son's school, doctor's appointments, and the grocery store).

17       Moreover, plaintiff's claim that his daily medication regimen made him too
18 "zone[d] out" to drive is inconsistent with his testimony that he drove his son to and
19 from school. It is also, as the ALJ noted (AR 30), inconsistent with his admission that
20 no treating physician had reported him to the DMV. Inconsistencies between a
21 plaintiff's testimony and his conduct, or within his testimony, can undermine a
22 plaintiff's claims of disabling pain or other subjective symptoms. *Thomas*, 278 F.3d at
23 958-59 (discounting credibility where plaintiff presented "conflicting information"
24 about her alcohol and drug use and engaged in activities inconsistent with claim of
25 disability).

26       As the ALJ provided several clear, convincing, and record-supported reasons for
27 finding plaintiff less than credible, remand on this issue is not warranted.
28 ///

2. <u>The hypothetical to the vocational expert</u>.

The ALJ determined, in pertinent part, that plaintiff could occasionally reach overhead bilaterally; frequently reach in all other directions bilaterally; frequently push and pull with the right hand; and occasionally push and pull with the left hand. (AR 26.) Citing the testimony of the vocational expert ("VE"), the ALJ found that plaintiff could work as a buttons and notions assembler, Dictionary of Occupational Titles ("DOT") 734.687-018; information clerk, DOT 237.367-022; and check cashier, DOT 205.367-014. (AR 33-34.) Thus, the ALJ reasoned, plaintiff was not disabled.

Plaintiff contends that in posing a hypothetical to the VE, the ALJ failed to include the limitation to occasionally pushing and pulling with the left hand. (*See* AR 39-40.) Therefore, the VE's testimony did not constitute substantial evidence supporting the non-disability finding. Moreover, plaintiff asserts, the error is not harmless, because plaintiff is left-hand dominant. (JS 25-28, 29.) The Court finds that remand is not warranted.

A VE's testimony may constitute substantial evidence of a claimant's ability to perform work which exists in significant numbers in the national economy when the ALJ poses a hypothetical question that accurately describes all of the limitations and restrictions of the claimant that are supported by the record. *See Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999); *see also Lewis v. Apfel*, 236 F.3d 503, 517 (9th Cir. 2001) ("If the record does not support the assumptions in the hypothetical, the vocational expert's opinion has no evidentiary value"). Therefore, a hypothetical question posed to the vocational expert must set out all of the claimant's limitations. *Gallant*, 753 F.2d at 1456 (internal quotation marks omitted). Here, defendant concedes that the hypothetical the ALJ posed to the VE did not include the left-hand push-pull limitation. (JS 28.) Defendant argues that the error is harmless, however, because the information clerk position "requires no more than occasional use of the upper extremity . . . ." (*Id.*)

///

1 The Court agrees with defendant. As set forth in the DOT, an information clerk:
2 [a]nswers inquiries from persons entering establishment[.] Provides
3 information regarding activities conducted at establishment, and location
4 of departments, offices, and employees within organization. Informs
5 customer of location of store merchandise in retail establishment. Provides
6 information concerning services, such as laundry and valet services, in
7 hotel. Receives and answers requests for information from company
8 officials and employees. May call employees or officials to information
9 desk to answer inquiries. May keep record of questions asked.
10 DOT 237.367-022 (G.P.O.), 1991 WL 672188. Nothing in this description indicates
11 that the job requires any pushing or pulling, with either or both upper extremities. In
12 addition, although the entry does not specifically address pushing and pulling, it
13 provides that reaching and handling are present only occasionally, and fingering and
14 feeling are not present at all. (*Id.*) It also provides that – in contrast to compiling data
15 and speaking with people – no significant specific vocational preparation is required
16 with respect to handling objects. Although these latter points are not dispositive, they
17 reinforce the Court's conclusion that the job does not require frequent use of either
18 upper extremity.

19 Thus, any error in failing to include the left-hand push-pull limitation in the
20 hypothetical to the VE was harmless. *See Stout v. Commissioner, Soc. Sec. Admin.*, 454
21 F.3d 1050, 1055 (9th Cir. 2006) (harmless error occurs where, *inter alia*, ALJ provides
22 other record-supported reasons for determination in question). Accordingly, remand is
23 not warranted.
24 / / /
25 / / /
26 / / /
27 / / /
28

**ORDER**

For the foregoing reasons, the Commissioner's decision is affirmed.

IT IS SO ORDERED.

DATED: September 30, 2014

                                        /S/ FREDERICK F. MUMM
                                           FREDERICK F. MUMM
                                      United States Magistrate Judge